IKUTA, Circuit Judge,
dissenting:
Because this case comes to us as an appeal from a denial of summary judgment based on qualified immunity, we must take all evidence in the light most favorable to Miller. Applying this standard, Simi Valley police received a report that a black *684 male in his late 20s, described by an eyewitness as 6'2" tall, 175 pounds, unkempt, and with hair styled in a “medium length loose afro,” had attempted to rob an El Torito restaurant. Three hours after the incident, Officer Hahesy was informed by an employee at a nearby Motel 6 “that two male blacks and a white female had checked into the motel.” The party had registered under the name Bernard Miller. Miller’s driver’s license and license plate records came up clean, but Hahesy decided the situation warranted further investigation. Officer Hahesy slowly drove his patrol car past Miller’s room, where the door was wide open and he could see Miller and his friends seated on beds, listening to music on a laptop, and conversing. Miller saw Hahesy drive by and continued about his business.
Miller is a black male in his late 20s. He is 5'11" tall (three inches shorter than the suspect) and 155 pounds (20 pounds lighter than the suspect). He had close-shaven hair rather than a medium-length loose afro. According to the police photographs he was well-groomed in appearance, not unkempt. Miller also had a mustache, a trait not shared by the suspect.
Nevertheless, after observing the three individuals relaxing in the open motel room, Hahesy called for backup. Shortly thereafter, four police officers approached the open door, two with guns drawn. An officer knocked on the door, stuck his head inside, and asked to speak with Miller. Miller said “sure,” turned off the music, and walked towards the door. As Miller crossed the threshold of the room, the officer and two others seized Miller and forcibly pulled him outside. They pushed his face against the outside wall and handcuffed him. They informed Miller that they were searching for a black suspect, and Miller said: “I’m an off-duty correction officer. I do have an off-duty weapon on me on my right-hand side. Inside the motel room is my jacket with my I.D. and my badge.” The officers detained Miller for 45 minutes in handcuffs while they searched his motel room and car.
At the time Miller was seized and handcuffed, the officers had no reasonable basis for suspecting that Miller had attempted to rob the El Torito. Other than age, race, and gender, Miller shared no other traits with the suspect, and, given the circumstances, these traits are not sufficient to establish reasonable suspicion. Officers are not permitted to “rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population.” United States v. Manzo-Jurado, 457 F.3d 928, 935 (9th Cir.2006); see also Choi v. Gaston, 220 F.3d 1010, 1012 (9th Cir.2000) (per curiam). Even where a suspect has been identified by race, it was clearly established at the time of the incident that “persons of a particular racial or ethnic group may not be stopped and questioned because of such appearance, unless there are other individualized or particularized factors which, together with the racial or ethnic appearance identified, rise to the level of reasonable suspicion or probable cause.” United States v. Montero-Camargo, 208 F.3d 1122, 1134 n. 22 (9th Cir.2000) (en banc); see also Morgan v. Woessner, 997 F.2d 1244, 1254 (9th Cir.1993) (holding that an informant’s tip “which essentially made all black men suspect, and the supposed fact that Morgan looked at them, turned and walked away” were insufficient to establish reasonable suspicion). Here, Miller shared no individualized or particularized factors with the suspect. To the contrary, Miller’s moustache and hairstyle, readily apparent traits not shared by the suspect, undercut any reasonable basis for suspicion. See Choi, 220 F.3d at 1012.
*685 Nor did the circumstances in which the officers spotted Miller give rise to a reasonable suspicion that would have permitted them to detain Miller on first contact. Three hours had elapsed since the attempted robbery, and the police had no reason to believe the suspect was still in the area. Miller had not tried to conceal his identity, but rather had booked the room with his own credit card and identification, and had provided his license plate number to the motel. Officer Hahesy’s review of Miller’s license and registration records raised no suspicions. While the Motel 6 was known as a locale where illegal drug activities took place, it was not known as a refuge for fleeing robbers. Moreover, “[a]n individual’s presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Further, the Motel 6 was a legitimate motel business. Where a location is used for both legal and illegal purposes, the presence of a person at that location “is not significantly probative to an assessment of reasonable suspicion.” Manzo-Jurado, 457 F.3d at 936.
Finally, Miller’s actions leading up to the detention did not give rise to an objectively reasonable suspicion that he had committed a crime. When an individual’s actions could have either innocent or unlawful explanations, a police officer may detain the individual in order “to resolve the ambiguity.” Wardlow, 528 U.S. at 125, 120 S.Ct. 673. This doctrine is inapplicable here, because none of Miller’s actions was suspicious. After Officer Hahesy drove by the room, Miller left the door open and remained seated on the bed in plain view, listening to music on his laptop and conversing with the room’s co-occupants. He did not get up, turn off the lights, or even shut the motel room door. Miller readily approached the officers upon request, at which point they allegedly seized and handcuffed him. Nothing in Miller’s innocuous actions, either singularly or taken together, would “justify the suspicion that criminal activity was afoot.” United States v. Sokolow, 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks omitted); see also Manzo-Jurado, 457 F.3d at 939.
As the majority correctly states, reasonable suspicion is evaluated in light of the “totality of the circumstances.” Taking into account the totality of the circumstances, and resolving all facts and inferences in favor of Miller, we must acknowledge that Miller did not share a single characteristic with the suspect other than his age, ethnicity, and gender, and that Miller’s background, criminal record, surroundings, and actions were not suspicious or indicative of criminal activity. Under the totality of these circumstances, the police lacked a reasonable suspicion to handcuff and detain Miller immediately as he crossed the threshold of the room. Because Miller has created a jury question regarding whether he was detained without reasonable suspicion, the district court did not err in denying summary judgment at this stage of the proceedings. I respectfully dissent.